UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOG EXPLORATION COMPANY, L.L.C.,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2791** |
| **SIGNET MARITIME CORPORATION, INC.,**<br>    **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a motion to transfer venue filed by Defendant/Counter-Plaintiff, Signet Maritime Corporation ("Signet").[1] Signet argues that this Court should transfer the above-captioned matter to the Corpus Christi Division of the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) because that is a more proper forum given the facts of this case. Plaintiff, LLOG Exploration Company, L.L.C. ("LLOG"), opposes the motion.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

This matter arises from a dispute over the interpretation of a maritime towing contract ("the Contract"). Specifically, Plaintiff LLOG filed a complaint for declaratory judgment on December 10, 2014, seeking a declaration of the rights, liabilities, and other legal relationships arising under the Contract.[1]

According to LLOG, the Contract concerned an agreement by Signet to provide five harbor tugs to tow LLOG's Delta House Floating Production System from Kiewit Offshore Services in Ingleside, Texas, to the Aransas Pass sea buoys.[2] The Contract

---

[1] R. Doc. 26.
[2] R. Doc. 28.
[1] R. Doc. 1.
[2] R. Doc. 1 at 2.

1

allegedly required that LLOG provide seven (7) days' notice of the sail or departure date, which LLOG argues it provided within the requisite time frame prior to the tow's commencement.[3] In the initial complaint, LLOG argues that it complied with the requirements of the Contract in all respects, but that Signet had nevertheless alleged entitlement to a "postponement fee" of $650,496.00.[4] Thus, LLOG filed the instant complaint seeking a declaratory judgment of its rights and liabilities under the Contract and whether it owed a postponement fee to Signet.[5]

Alternatively, Defendant Signet alleges that, on July 15, 2014, LLOG informed Signet that "all tow related activities need[ed] to be ready for August 4th."[6] However, according to Signet, LLOG delayed the tow until September 14, 2014. Thus, Signet demanded a postponement fee of $650,496.00, which Signet contends it is entitled to under the Contract.[7] More specifically, Signet represents that LLOG's actions of delaying the tow "triggered LLOG's contractual obligations to pay delay payments to Signet and that LLOG breached its obligations under the contract by failing to pay this sum."[8] Signet's alleged entitlement to this delay payment is the foundation of the underlying dispute.

On April 7, 2015, Signet filed a motion to transfer venue, requesting that this matter be transferred to the Corpus Christi Division of the Southern District of Texas.[9] The Court denied this motion without prejudice, pending the outcome of ongoing

---

[3] R. Doc. 1 at 2.
[4] R. Doc. 1 at 2.
[5] *See* R. Doc. 26.
[6] R. Doc. 26-1 at 2.
[7] R. Doc. 26-1 at 2.
[8] R. Doc. 26-1 at 2.
[9] R. Doc. 17.

2

settlement negotiations and an upcoming mediation.[10] Signet renewed its motion to transfer venue on July 16, 2015, representing that settlement negotiations with LLOG had failed.[11] LLOG opposes Signet's motion.[12] For the reasons stated more fully herein, Signet's motion to transfer venue is **DENIED**.

## LAW AND ANALYSIS

The United States Code permits a district court to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice," to any other district "where it might have been brought."[13] A party moving to transfer venue must first demonstrate that the plaintiff could have brought the action in the transferee court.[14] If venue in the transferee court would be proper, the moving party has the burden of showing "good cause" for transfer by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'"[15] If the transferee court is not clearly more convenient, then the court deciding whether to transfer should respect a plaintiff's choice of venue.[16]

In deciding whether to transfer a case when more than one venue is proper, a court must consider the private interest and public interest factors enunciated in *Gulf Oil Corp v. Gilbert*.[17] The "private interest factors" include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3)

---

[10] *See* R. Doc. 20.
[11] R. Doc. 26.
[12] R. Doc. 28.
[13] 28 U.S.C. § 1404(a).
[14] *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") ("In applying the provisions of § 1404(a), we have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.").
[15] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (quoting 28 U.S.C. § 1404(a)).
[16] *See Volkswagen II*, 545 F.3d at 315.
[17] 330 U.S. 501, 508 (1947). *See also Volkswagen II*, 545 F.3d at 315.

the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive.[18] The "public interest factors" include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; (4) the avoidance of unnecessary problems of conflict of laws or application of foreign law.[19] These eight factors "are appropriate for most transfer cases, [but] they are not necessarily exhaustive or exclusive."[20] Nor is any one factor or combination of factors dispositive.[21]

## DISCUSSION

Signet does not dispute that venue is proper in the Eastern District of Louisiana. Rather, Signet submits that the Corpus Christi Division of the Southern District of Texas is the more proper venue due to the balance of the private and public interest factors.[22] Specifically, Signet argues that this matter should be transferred because, in principal: (1) most of the witnesses to this dispute reside in Texas; (2) LLOG does business in Texas, and therefore its employees would not be inconvenienced by testifying in Texas; and (3) the underlying dispute concerns a Texas-based contractual agreement.[23]

Likewise, LLOG does not dispute that venue is proper in either district. Rather, LLOG contends that Signet has failed to show good cause why this case should be transferred, as many of the private and public interest factors do not weigh in favor of

---

[18] *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). *See also Volkswagen II*, 545 F.3d at 315; *Gulf Oil*, 330 U.S. at 508.
[19] *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft*, 454 U.S. at 241). *See also Volkswagen II*, 545 F.3d at 315; *Gulf Oil*, 330 U.S. at 508.
[20] *Volkswagen I*, 371 F.3d at 203.
[21] *Id.*
[22] *See* R. Doc. 26-1 at 5.
[23] *See* R. Doc. 26-1 at 5.

4

transfer.[24] LLOG argues that transferring this matter to the Southern District of Texas would "merely shift inconvenience from Signet to LLOG."[25] Since LLOG filed suit first, in its home district, LLOG requests that the Court respect its choice.[26]

The Court will respect LLOG's choice of venue. As to the private interest factors, Signet contends the Southern District of Texas is the more appropriate forum, as "most if not all of the likely witnesses reside in Texas."[27] However, the Court is not persuaded that this is the case. Although Signet's witnesses may reside in Texas, LLOG's witnesses reside in Louisiana. Regardless, there likely will be few witnesses for either party, as the principal dispute does not concern the performance of the Contract but instead the interpretation of its contractual terms.[28] As noted by LLOG, the disputed language of the Contract is contained in an email, the author of which resides in Covington, Louisiana, and is within this Court's subpoena power.[29] Thus, if testimony is required on this issue, the Eastern District of Louisiana would be the more appropriate forum.

Signet further argues, through a declaration filed in support of its motion, that various third-party witnesses with knowledge of the Contract and the work to be performed thereunder are located in Texas.[30] Although these witnesses may reside in Texas, it is not clear the testimony of these witnesses is relevant to the instant dispute.[31] "In reality, this case involves the legal interpretation of a contract entered into between

---

[24] *See generally* R. Doc. 28 at 1–4, 6.
[25] R. Doc. 28 at 6.
[26] R. Doc. 28 at 6.
[27] *See* R. Doc. 26-1 at 5.
[28] As stated by LLOG, "[t]he only relevant issues involve interpretation of the contract and, perhaps, the notice(s) given by plaintiff LLOG Exploration Company, L.L.C. ("LLOG") to Signet regarding commencement of the towage." *See* R. Doc. 28 at 1.
[29] R. Doc. 28 at 3.
[30] *See* R. Doc. 26-1 at 5; R. Doc. 26-2 ("Exhibit A. Declaration in Support of Motion to Transfer").
[31] As stated above, the underlying dispute is one involving the interpretation of contractual terms. It is unlikely, and highly improbable, that any third-party witnesses possess relevant knowledge with regard to the proper interpretation of these contractual terms.

the Louisiana plaintiff and Texas defendant."[32] Thus, the intended location of the bargained-for performance is entirely immaterial to the interpretation of the Contract's terms.[33] More specifically, it is of no moment that the underlying performance was to occur in Texas; that LLOG does business in Texas; or that third-parties to the Contract are located in Texas.

Rather, the Court notes that LLOG also does business in Louisiana,[34] as does Signet.[35] In this case, Signet knowingly entered into a contractual relationship with LLOG, a Louisiana corporation. Moreover, LLOG was the first to file suit, and it chose to do so in Louisiana, not Texas. For these reasons, it should not be unexpected that Signet would be amenable to suit in this district. Consequently, LLOG's home district, the Eastern District of Louisiana, is a proper forum for this dispute concerning the interpretation of contractual terms.

The Court finds that a trial will be just as easy, expeditious, and inexpensive in New Orleans as it would be in Corpus Christi. There is no compelling evidence that it would be more convenient for the parties or witnesses to try this case in Texas. Rather, transferring this case to the Southern District of Texas would merely shift the inconvenience and burden from Defendant Signet to Plaintiff LLOG,[36] and the Court

---

[32] R. Doc. 28 at 1.
[33] *See, e.g.*, *Brown v. Petroleum Helicopters, Inc.*, 347 F. Supp. 2d 370, 374 (S.D. Tex. 2004) (holding that the intended location of a contract's performance "weighs neither for nor against transfer" in a dispute over the contract's interpretation). The *Brown* court noted that a "contract may be interpreted anywhere with equal ease," without regard to where that contract was to be performed. *Id*.
[34] R. Doc. 28 at 1–2.
[35] R. Doc. 28 at 2. *See also* R. Doc. 28-1 ("Exhibit A. Extract from Signet's Website"). In fact, Signet is registered to do business in Louisiana, and it maintains a registered agent for service of process in the state. *See* R. Doc. 28 at 2; R. Doc. 28-2 ("Exhibit B").
[36] *See* R. Doc. 28 at 3 ("While Signet may argue [the Southern District of Texas] is convenient, a Corpus Christi, Texas forum is plainly inconvenient for LLOG. . . . It would be more convenient only for Signet. LLOG properly commenced this action in the judicial district where it resides, before Signet's suit in Texas, and the case should be allowed to proceed here.").

will not shift the burden from one party to the other absent a compelling reason to do so.[37]

The public interest factors also do not weigh in favor of transfer. The Eastern District of Louisiana is no more congested than the Southern District of Texas. The trial dockets in this district and in the Southern District of Texas are similar, so there is no reason to believe that proceeding in Texas would be more efficient. In addition, this case is governed by the admiralty and maritime laws of the United States, which this Court is as qualified to apply as is the Southern District of Texas.[38]

Given that this is not a case where the plaintiff selected a forum that is completely unrelated either to the parties or the events giving rise to the litigation, the plaintiff's choice of forum should be given deference.[39] The convenience of the parties and witnesses and the interests of justice, based on the totality of the circumstances, do not warrant a transfer.

Accordingly;

**IT IS ORDERED** that the motion to transfer venue is **DENIED.**

**New Orleans, Louisiana, this 10th day of September, 2015.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[37] *See Healthpoint, Ltd. v. Derma Sci.*, 939 F. Supp. 2d 680, 689 (W.D. Tex. 2013); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. 09-3818, 2009 WL 4723138, at *2 (E.D. La. Dec. 7, 2009); *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 703–04 (E.D. Tex. 2007).
[38] *See* R. Doc. 1 at 1; R. Doc. 28 at 6.
[39] *See Alley v. Metropolitan Life Ins. Co.*, No. 12-2606, 2013 WL 2355452, at *4 (E.D. La. May 29, 2013); *Travelers Cas. & Surety Co. of Am. v. Univ. Facilities, Inc.*, 2011 WL 197897, at *7 (E.D. La. Jan. 20, 2011).